UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JAMES EDWARD GREER,                                Case No. 15-CV-3094 (SRN/FLN)

               Petitioner,

v.                                                                 REPORT AND RECOMMENDATION

WARDEN DENISE WILSON,

               Respondent.

---

James Edward Greer, pro se.

Lisa D. Kirkpatrick, UNITED STATES ATTORNEY'S OFFICE, for respondent.

Federal law prohibits felons from possessing firearms. *See* 18 U.S.C. § 922(g)(1). Usually, this offense is punishable by up to a 10-year term of imprisonment, *see* 18 U.S.C. § 924(a)(2), but under the Armed Career Criminal Act ("ACCA"), a felon in possession of a firearm who has three previous convictions for violent felonies or serious drug offenses *may* be imprisoned for life, and *must* be sentenced to a 15-year term of imprisonment, *see* 18 U.S.C. § 924(e).

The term "violent felony," as used in § 924(e), is defined by that provision as

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that —
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that*

> *presents a serious potential risk of physical injury*
> *to another . . . .*

18 U.S.C. § 924(e)(2)(B) (emphasis added). In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court found that the language italicized above — the so-called residual clause of the ACCA — is unconstitutionally vague. Any criminal judgment that is based on the residual clause of the ACCA and has not yet become final is therefore invalid. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . .").

Left unsettled by *Johnson* is the status of countless federal prisoners whose ACCA convictions became final prior to *Johnson*. Petitioner James Edward Greer — who is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota — is one such prisoner. Greer alleges that he was subject to the 15-year minimum term of imprisonment imposed by § 924(e) only because of the now-defunct residual clause, and he has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 arguing his sentence must be vacated as a result.

This matter is before this Court on the government's motion to dismiss Greer's habeas petition for lack of jurisdiction.[1] *See* ECF No. 8. According to the government, Greer may not seek habeas relief in this District because an alternative procedural vehicle is available to him — a second-or-successive motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. This Court disagrees. Second-or-successive motions for relief under § 2255 are

---

[1]The motion has been referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

permitted only in extraordinary circumstances. Those circumstances are not present here. In addition, Greer has *never* had an adequate or effective opportunity previously to raise the claim brought in his habeas petition through § 2255 or by any other means. This Court therefore recommends that the government's motion to dismiss be denied.

## I. FACTUAL BACKGROUND

In 2008, Greer was indicted in the United States District Court for the District of Nebraska on one count of illegally possessing a firearm under § 922(g)(1). *See United States v. Greer*, No. 8:08-cr-0132-JFB-TDT (D. Neb. filed Mar. 19, 2008). After a jury trial, Greer was found guilty of the offense and sentenced to a 188-month term of imprisonment. *Id.* The Eighth Circuit affirmed Greer's conviction and sentence on appeal. *See United States v. Greer*, 607 F.3d 559 (8th Cir. 2010). Shortly after his conviction became final, Greer filed a motion under § 2255 alleging that he was denied effective assistance of counsel at trial. Greer's § 2255 motion was denied by the trial court, which also declined to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The Eighth Circuit declined to review the denial of Greer's motion for relief under § 2255.[2]

The Supreme Court announced its decision in *Johnson* on June 26, 2015. Less than a month later, Greer filed a petition for habeas relief, alleging that his sentence is now invalid on

---

[2] Greer has also previously sought habeas relief in this District, alleging that the Supreme Court's decisions in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and *Descamps v. United States*, 133 S. Ct. 2276 (2013), required that his sentence be vacated. This Court concluded that neither *Alleyne* nor *Descamps* were entitled to retroactive effect; that this Court was without jurisdiction to consider Greer's habeas petition; and that, even if this Court had jurisdiction, the petition was without merit. *See Greer v. Wilson*, No. 13-CV-3185 (SRN/FLN), 2015 WL 179387 (D. Minn. Jan. 14, 2015). The Eighth Circuit summarily affirmed this Court's denial of habeas relief on appeal.

account of *Johnson*. Greer was the first prisoner in this District to challenge the validity of a conviction under the ACCA through a petition for a writ of habeas corpus, and his petition presents difficult procedural issues of first impression regarding whether and how prisoners whose convictions have already become final may seek relief under *Johnson*. Due to the difficulty of these issues, this Court ordered the government to answer the following three questions:

    a.    May Greer or any other prisoner raise a claim arising under *Johnson v. United States*, 135 S. Ct. 2551 (2015), in a second or successive motion under 28 U.S.C. § 2255? In other words, is the premise of Greer's habeas claim "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable"? 28 U.S.C. § 2255(h)(2).

    b.    If Greer may not raise his claim under *Johnson* in a second or successive motion under § 2255 in the district of conviction (after authorization from the Eighth Circuit), may Greer pursue the claim in a petition for habeas relief in this District pursuant to the savings clause of 28 U.S.C. § 2255(e)?

    c.    Was Greer's conviction under the Armed Career Criminal Act, 18 U.S.C. § 924(e), predicated upon one or more prior convictions for crimes deemed to be violent felonies only due to the operation of the "residual clause" of § 924(e)(2)(B)(ii)?

ECF No. 3 at 1-2.

In response to this Court's order, the government filed a motion to dismiss Greer's habeas petition for lack of jurisdiction. *See* ECF No. 8. Unfortunately, the government attempted to answer only the first of the questions presented by this Court. According to the government, *Johnson* established "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C.

-4-

§ 2255(h)(2), and therefore Greer may raise a challenge to his sentence based on *Johnson* in a second-or-successive motion under § 2255.  Because it concluded that relief remains available under § 2255 to Greer, the government did not attempt to answer whether habeas relief would be available to Greer if it is mistaken about the scope of § 2255(h)(2).  Finally, the government has suggested that "it appears unlikely . . . that *Johnson* affects [Greer's] classification as an armed career criminal," ECF No. 5 at 2, although it is not clear what that conclusion is based upon, as the government also acknowledges that it has thus far been "unable to obtain Greer's file containing his prior convictions," ECF No. 8 at 4 n.1.

## II.  ANALYSIS

### A.  *Legal Background*

"Power to issue the writ of habeas corpus, the most celebrated writ in the English law," was among the first powers granted by Congress to the federal courts.  *United States v. Hayman*, 342 U.S. 205, 210 (1952) (citing the Judiciary Act of 1789, 1 Stat. 73, 81-82; quotation omitted).  The writ of habeas corpus protects against unlawful detention.  Today, the most common use of the petition for a writ of habeas corpus is to challenge the legality of a criminal conviction, but the habeas authority originally granted to the federal courts was far more limited.  "Although the objective of the Great Writ long has been the liberation of those unlawfully imprisoned, at common law a judgment of conviction rendered by a court of general criminal jurisdiction was conclusive proof that confinement was legal.  Such a judgment prevented issuance of the writ without more."  *Id.* at 210-11 (citing *Ex parte Watkins*, 28 U.S. 193 (1830)).  Thus, in the earliest days of the federal courts, the *fact* of a criminal conviction was sufficient to establish the *legality* of the prisoner's detention.  *See also Lindh v. Murphy*, 96 F.3d 856, 867 (7th Cir. 1996) (en

banc), reversed on other grounds, 521 U.S. 320 (1997) ("The writ known in 1789 was the pre-trial contest to the executive's power to hold a person captive, the device that prevents arbitrary detention without trial. The power thus enshrined did not include the ability to reexamine judgments rendered by courts possessing jurisdiction." (citations omitted)).

Congress expanded the authority of the federal courts to issue the Great Writ following the Civil War. "In 1867, Congress changed the commonlaw rule by extending the writ of habeas corpus to 'all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States', and providing for inquiry into the facts of detention." *Hayman*, 342 U.S. at 211 (quoting 14 Stat. 385). The effect of the 1867 Act was "to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice . . . a more searching investigation" into the legality of the underlying conviction. *Johnson v. Zerbst*, 304 U.S. 458, 466 (1938) (quotations omitted). The fact that a prisoner was held pursuant to a facially valid criminal judgment was no longer sufficient to defeat a habeas petition if the prisoner could show that the judgment was obtained in an unlawful manner.

Over time, the category of unlawful action that would result in an invalidation of a perfected criminal judgment gradually expanded. *See, e.g.*, *Moore v. Dempsey*, 261 U.S. 86, 87-92 (1923) (habeas relief available where mob action deprived defendants of due process); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (habeas relief available where "a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured."); *Zerbst*, 304 U.S. at 467-68 (1938) (habeas

relief available where prisoner was convicted and sentenced without the assistance of counsel); *Waley v. Johnston*, 316 U.S. 101, 102-05 (1942) (per curiam) (habeas relief available where guilty plea was alleged to be coerced by law-enforcement officials). Predictably, the expansion of the federal courts' statutory authority to grant habeas relief, coupled with the growing number of constitutional errors entitling a prisoner to habeas relief, caused "a great increase in the number of applications for habeas corpus filed in the federal courts by state and federal prisoners." *Heyman*, 342 U.S. at 212. "During 1936 and 1937, an annual average of 310 applications for habeas corpus were filed in the District Courts and an annual average of 22 prisoners were released. By 1943, 1944 and 1945, however, the annual average of filings reached 845, although an average of only 26 prisoners were released per year." *Id*. at 212 n.13.

This flood of habeas petitions created several administrative problems. Because the writ of habeas corpus acts as a remedy against illegal detention, it is generally enforced against the person effecting the illegal detention (for example, the warden of the institution where the prisoner is located). *See, e.g.*, *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("longstanding practice confirms that in habeas challenges to present physical confinement — 'core challenges' — the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ."). A prisoner therefore must seek habeas relief in the district where his custodian is located. *See Braden v. 20th Judicial Circuit Ct. of Ky.*, 410 U.S. 484, 493-501 (1973); *United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000) (per curiam) (collecting cases). A disproportionate share of the habeas petitions submitted by federal prisoners were filed in the relatively few judicial districts containing federal prisons. *See Hayman*, 342 U.S. at 214 n.18 ("Of all habeas corpus applications filed by federal prisoners, 63% were filed in

but five of the eighty-four District Courts."). "From this resulted the unseemly spectacle of federal district courts trying the regularity of proceedings had in courts of coordinate jurisdiction . . . ." Hon. John J. Parker, *Limiting the Abuse of Habeas Corpus*, 8 F.R.D. 171, 172-73 (1948). Making matters still worse, the courts invested with habeas power frequently had little or no familiarity with the facts underlying the criminal judgments being challenged, as those judgments had been entered elsewhere.

Against that backdrop, Congress in 1948 enacted an alternative procedural vehicle, codified at 28 U.S.C. § 2255, for federal prisoners to challenge the legality of a conviction or sentence. Section 2255 permits — indeed, almost always *requires* — federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law" to "*move the court which imposed the sentence* to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a) (emphasis added). In other words, § 2255 shifts the venue for collateral challenges to federal convictions and sentences from the district of *incarceration* to the district of *conviction*, "where the facts with regard to the procedure followed are known to the court officials, and where the United States Attorney who prosecuted the case will be at hand to see that these facts are fairly presented." *Limiting the Abuse of Habeas Corpus*, 8 F.R.D. at 175. District courts are without jurisdiction to consider a habeas petition challenging the legality of detention that should have been brought under § 2255. *See DeSimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 1986) (per curiam).

Though a tidy solution to several difficulties with habeas practice, § 2255 created one potential problem. The Constitution guarantees that the "privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. 1, Sec. 9. Due to the concern that § 2255 might be interpreted as an unconstitutional suspension of habeas corpus, Congress carved out an exception to the general rule that challenges to the legality of federal convictions must be brought under § 2255 in the district of conviction. Under 28 U.S.C. § 2255(e),

> An application for a writ of habeas corpus [on] behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

(Emphasis added.) The "inadequate or ineffective remedy" exception is sometimes called the "savings clause," *see Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004), both because it saves § 2255 from being interpreted as a suspension of the writ, *see Hayman*, 342 U.S. at 223, and because, when it applies, it can "save" a habeas petition from being dismissed under the § 2255(e) exclusive-remedy rule.

Neither the Supreme Court nor the Eighth Circuit has adopted a specific test for when a prisoner may invoke the savings clause.[3] A few principles are clear, however. Prisoners may not invoke the savings clause on account of a *procedural* barrier that prevents them from now seeking relief under § 2255. "Specifically, the § 2255 motion is not inadequate or ineffective

---

[3]Indeed, only twice has the Supreme Court discussed the language of § 2255(e) in any capacity. *See Webster v. Daniels*, 784 F.3d 1123, 1152-53 (7th Cir. 2015) (J. Easterbrook, dissenting) (citing *Hayman* and *Swain v. Pressley*, 430 U.S. 372 (1977)).

merely because § 2255 relief has already been denied, or because petitioner has been denied permission to file a second or successive § 2255 motion, or because a second or successive § 2255 motion has been dismissed, or because petitioner has allowed the one year statute of limitations and/or grace period to expire." *United States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir. 2000). If § 2255 previously offered an opportunity for the prisoner to litigate his claim, then the prisoner may not later seek relief under the savings clause. In addition, the several circuit courts that have established tests governing when the savings clause may be invoked generally require that, where a petitioner seeks to invoke the savings clause, the petitioner must show (among other things) that he seeks to apply (1) a new rule of law that (2) applies retroactively to cases on collateral review. *See, e.g.*, *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1274 (11th Cir. 2013) (requiring that the petitioner establish that "the new rule . . . applies retroactively on collateral review . . . ."). "Actual innocence" is also invoked by some courts as a requirement for habeas relief, *see Reyes-Requena v. United States*, 243 F.3d 893, 903 (5th Cir. 2001), although, as explained below, the sense in which the term "actual innocence" is used differs from circuit to circuit.

   With those broad principles in mind, this Court now turns to the question of whether it has jurisdiction to consider the claim raised in Greer's habeas petition.


### B. Is Greer's Claim Cognizable under the Savings Clause?

Section 2255(e) sets two limitations on the ability of federal prisoners to seek habeas relief when challenging the legality of their conviction or sentence.[4]  First, § 2255(e) contains an exclusive-remedy rule.  Where the habeas applicant *can* or *could have* moved for relief under § 2255, he is required to do so.  *See* 28 U.S.C. § 2255(e) ("An application for a writ of habeas corpus . . . shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief . . . .").  This is the basis of the government's motion to dismiss Greer's habeas petition.  The government argues that Greer can raise his claim for relief in a second-or-successive motion under § 2255, and therefore that Greer's habeas petition must be dismissed.  This argument will be addressed below.  Because the matter is jurisdictional, though, this Court must also address the second limitation set forth in § 2255(e); it will do so before turning to the government's argument.

Apart from the requirement that all grounds for relief challenging a conviction or sentence collaterally must (whenever possible) be presented in a motion to vacate in the district of conviction, § 2255(e) also limits habeas relief to cases in which a prisoner seeks to "test the legality of his detention."  28 U.S.C. § 2255(e).  This is a *substantive* limitation independent of the "procedural" requirement that § 2255 be used wherever available to the prisoner.  So far as this Court can tell, every court to consider the issue agrees that not *all* claims of error are cognizable under the savings clause.

---

[4]Habeas relief remains available to federal prisoners who are challenging the legality of their detention but are *not* challenging the legality of their conviction or sentence — for example, where a prisoner alleges that he has wrongfully been denied good-time credits.  *See* 18 U.S.C. § 3624(b).

But that superficial unanimity obscures the "deep and mature circuit split on the reach of the savings clause." *Bryant*, 738 F.3d at 1279. This Court is of course bound by the holdings of the Eighth Circuit, and so any limitations on the savings clause recognized by the Eighth Circuit must likewise be recognized by this Court. That said, "[t]he Eighth Circuit has the least developed savings-clause jurisprudence" among the circuit courts. *Id*. at 1281. The Eighth Circuit's savings-clause jurisprudence has thus far been limited to discussion of the procedural limitations imposed by § 2255(e) — i.e., the requirement that prisoners must use § 2255 whenever possible. *See Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010) (savings-clause relief not available where motion under § 2255 is denied on the merits); *Abdullah*, 392 F.3d at 963 (surveying case law from other circuits and concluding that habeas petition must be denied because prisoner had "an unobstructed procedural opportunity to present his claim — either by amending his first § 2255 motion or by presenting a timely second § 2255 motion and receiving authorization to file it."); *Hill v. Morrison*, 349 F.3d 1089, 1092 (8th Cir. 2003) (denying habeas relief as petitioner "had at least two opportunities to raise this argument before the sentencing district."); *Lurie*, 207 F.3d at 1077-78 (denying savings-clause relief because "[a]ll of the claims asserted here . . . could have been maintained in a timely § 2255 motion or on direct appeal." (footnote omitted)). The Eighth Circuit has not yet addressed the question of what *substantive* claims may be raised under the savings clause should the procedural limitations be overcome. This Court will therefore look to the other circuits for guidance on the scope of § 2255(e) and the substantive claims that may be raised thereunder.

The Tenth Circuit, like the Eighth Circuit, has not yet affirmatively held that *any* claims are substantively cognizable under the savings clause.[5]  The remainder of the circuits, however, have expressly recognized that, at minimum, actual-innocence claims are cognizable under the savings clause.  *See, e.g.*, *Williams v. Warden, Federal Bureau of Prisons*, 713 F.3d 1332, 1345-46 (11th Cir. 2013); *Reminsky v. United States*, 523 Fed. App'x 327, 328-29 (6th Cir. 2013) (per curiam); *Marrero v. Ives*, 682 F.3d 1190, 1192 (9th Cir. 2012); *United States v. Poole*, 531 F.3d 263, 267 n.3 (4th Cir. 2008); *Poindexter v. Nash*, 333 F.3d 372, 378-81 (2d Cir. 2003); *Reyes-Requena*, 243 F.3d at 904; *United States v. Barrett*, 178 F.3d 34, 52-53 (1st Cir. 1999); *In re Davenport*, 147 F.3d 605, 609-10 (7th Cir. 1998); *In re Dorsainvil*, 119 F.3d 245, 248-52 (3d Cir. 1997).  Again, though, this apparent unanimity breaks down upon closer examination, as these courts "have framed the actual innocence factor differently . . . ."  *Reyes-Requena*, 243 F.3d at 903.  The Supreme Court has defined "actual innocence," in a different context, as "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  A few circuits have held similarly for purposes of the savings clause; in those jurisdictions, the prisoner may not invoke the savings clause unless he has been convicted of a nonexistent criminal offense.  *See Vinson v. Maiorana*, 604 Fed. App'x 349, 350 (5th Cir. 2015) (per curiam).

---

[5]This is largely because the Tenth Circuit has interpreted the procedural limitations of § 2255 expansively.  Tenth Circuit jurisprudence forbids savings-clause relief in all instances where the petitioner could have raised the argument underlying his habeas petition in a motion under § 2255, even if that argument was squarely foreclosed by circuit or Supreme Court precedent at the time the petitioner would have had to have raised that argument.  *See Prost v. Anderson*, 636 F.3d 578, 584-88 (10th Cir. 2011).  Savings-clause relief in the Tenth Circuit is cabined to truly extraordinary circumstances in which the prisoner literally could not have filed a motion under § 2255 in the sentencing court — such as, for example, where the sentencing court has since been abolished.  *Id.* at 588 (citing *Spaulding v. Taylor*, 336 F.2d 192 (10th Cir. 1964)).

Greer's habeas petition would be doomed in such a jurisdiction. Greer does not dispute that he unlawfully possessed a firearm, and thus, under § 922(g), Greer was lawfully subject to a 120-month term of imprisonment for his offense. *See* 18 U.S.C. § 924(a)(2). What Greer disputes is that he is subject to the sentencing enhancement of the ACCA, pursuant to which he was sentenced to a term of imprisonment 88 months longer than otherwise would have applied. *See* 18 U.S.C. § 924(e).

Not all circuits have interpreted actual innocence so narrowly as conviction for a nonexistent crime. For example, although the Fourth Circuit has traditionally required "actual innocence of a criminal act" before a petitioner may invoke the savings clause, *United States v. Surratt*, – F.3d – , 2015 WL 4591677, at *4 (4th Cir. July 31, 2015), that court has also left open the possibility, albeit in dicta, that "a sentence imposed above the proper statutory maximum might present another instance of an unlawful sentence" in which the savings clause may be invoked. *Id*. at *12 (citing, inter alia, *Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc)). Several other courts have similarly hinted (without addressing the issue) that savings-clause relief might be available to a petitioner challenging a sentence imposed above the statutory maximum, notwithstanding language in prior cases asserting that only "actual innocence" claims are permitted. *See Marrero*, 682 F.3d at 1194-95 (noting that "some courts have suggested that a petitioner may qualify for the [savings clause] if he received a sentence for which he was statutorily ineligible," but that it would not decide the issue as petitioner did not qualify for the possible exception); *Trenkler v. United States*, 536 F.3d 85, 99 (1st Cir. 2008) (rejecting savings-clause challenge where petitioner did "not charge that [the imposed sentence was] beyond the statutory maximum for the crimes of conviction."); *United States v. Peterman*,

249 F.3d 458, 462 (2001) (noting that "[c]ourts have generally declined to collaterally review sentences that fall within the statutory maximum."). In other words, a circuit's express requirement that "actual innocence" be required to invoke the savings clause does not *necessarily* mean that a petitioner is forbidden in that jurisdiction from challenging a sentence imposed in excess of a statutory minimum.

Two circuits have gone still further. The Eleventh Circuit has expressly held that a federal habeas petitioner may challenge a sentence imposed in excess of the statutory maximum via the savings clause. *Bryant*, 738 F.3d at 1281-84. The Seventh Circuit has extended the savings clause even more broadly. Whereas *Bryant* permits a savings-clause challenge to a sentence only where that sentence exceeds the statutory maximum, *see Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011), the Seventh Circuit has signaled that misapplication of the career-offender enhancement of the Sentencing Guidelines can justify habeas relief, even though the sentence imposed remains within the range permitted by statute.[6] *See Brown v. Caraway*, 719 F.3d 583, 587 (7th Cir. 2013).[7]

This Court finds the Eleventh Circuit's opinion in *Bryant* to be highly instructive, as that case is closely analogous to this case:

---

[6]The government has adopted something approaching the Seventh Circuit's position in other litigation. *See Surratt*, 2015 WL 4591677, at *3.

[7]And yet five judges of the Seventh Circuit have recently concluded (in dissent) that something approaching (and perhaps going beyond) the highly restrictive position of the Tenth Circuit is appropriate, thus underscoring the extensive disagreement regarding the scope of the savings clause across the country, even among jurists within circuits. *See Webster v. Daniels*, 784 F.3d 1123, 1146-54 (7th Cir. 2015) (J. Easterbrook, dissenting).

The petitioner in *Bryant*, like Greer, was convicted under § 922(g). *Bryant*, 738 F.3d at 1257-58. The trial court found at sentencing that Bryant had committed three predicate offenses under the ACCA and imposed a 235-month term of imprisonment. *Id*. at 1258-60. The conviction and sentence were affirmed on appeal. *Id*. at 1260 (citing *United States v. Bryant*, 52 Fed. App'x 487 (11th Cir. 2002) (unpublished table disposition)). After his conviction became final, Bryant filed two motions for relief under § 2255 in the trial court. The first motion was denied as time-barred, and the second motion (filed about three years after the first) was denied on account of Bryant's failure to obtain authorization to file a second-or-successive motion under § 2255 from the Eleventh Circuit. *Id*.

Bryant then sought authorization from the Eleventh Circuit to file a new motion under § 2255. *Id*. In his petition for authorization, Bryant argued that the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008) — which authorized a more restrictive interpretation of "violent felony" under the ACCA than previously adopted by some courts — announced a new rule of constitutional law made retroactive to cases on collateral review. *See* 28 U.S.C. § 2255(h)(2). The Eleventh Circuit denied authorization, finding that "*Begay* was not a 'new rule of *constitutional* law' under § 2255(h), because it interpreted a substantive criminal statute, i.e., § 924(e)." *Bryant*, 738 F.3d at 1260.

Undeterred, Bryant then filed a petition for a writ of habeas corpus, again raising his claim under *Begay*. The district court dismissed the habeas petition, but the Eleventh Circuit reversed the dismissal after an exhaustive review of savings-clause jurisprudence around the country and a textual analysis of the savings clause. The Eleventh Circuit found that the savings clause permits relief where the petitioner can show a "'fundamental defect in sentencing,'" such

as the imposition of a sentence greater than the maximum permitted by statute. *Id.* at 1268 (quoting *Gilbert v. United States*, 640 F.3d 1293, 1319 n.20 (11th Cir. 2011) (en banc)). The matter was remanded to the district court with instructions to impose the 10-year maximum statutory penalty of § 924(a).

Given the broad disagreement among the courts described above, any conclusions about the scope of the savings clause must be offered only tentatively. With that caveat in mind, this Court concludes that a habeas petitioner may raise a *Johnson* claim through the savings clause, for the reasons articulated at length in *Bryant*. Most importantly (in this Court's view), "the plain text of § 2255(e) supports the proposition that the savings clause should not be restricted simply to actual-innocence claims." *Bryant*, 738 F.3d at 1281. Nothing about the text of § 2255(e) *necessarily* limits application of the savings clause only to instances in which a prisoner is held despite having committed no crime whatsoever. Instead, the savings clause is available where § 2255 is "is inadequate or ineffective to test the legality of [the prisoner's] detention." And under Eighth Circuit case law, "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority." *Sun Bear*, 644 F.3d at 705; *see also United States v. Stobaugh*, 420 F.3d 796, 804 (8th Cir. 2005) ("[A] sentence is not illegal . . . unless it exceeds the statutory maximum for the offense of conviction.").

Having concluded that Greer's claim that his sentence was imposed in excess of what is permitted by statute is cognizable under the savings clause, this Court will now turn to the question posed by the government's motion to dismiss: Can Greer raise his claim in a second-or-successive motion under § 2255?

### C. May Greer File a Second-or-Successive Motion under § 2255(h)(2)?

Greer previously sought relief under § 2255 on the basis that his trial counsel was ineffective; the motion was denied. Prisoners are categorically barred from bringing second-or-successive motions under § 2255 unless the motion is certified by the appropriate court of appeals to contain either (1) "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense" or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h). The government contends — without citation or analysis — that § 2255 is not inadequate or ineffective for Greer to test the legality of his sentence because *Johnson* is "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," and thus Greer may bring a second-or-successive motion under § 2255. 28 U.S.C. § 2255(h)(2). And because Greer may bring a second-or-successive motion under § 2255 (says the government), he may not challenge the validity of his sentence through a habeas petition.

Section 2255(h)(2) contains five discrete requirements. First, the rule relied upon must be a "new rule." Second, the new rule must be one of "constitutional law." Third, the new rule of constitutional law must have been "previously unavailable" to the prisoner. Fourth, the new rule must apply to cases on collateral review. And fifth, the new rule must be "made retroactive . . . by the Supreme Court."

Here, there is no dispute that four of the five § 2255(h)(2) requirements are met. It is clear that *Johnson* established a new rule (it expressly overturned prior Supreme Court case law),

that the new rule is one of constitutional law, and that the new rule was previously unavailable to Greer.

Further, the new rule announced in *Johnson* likely *applies* retroactively to cases on collateral review. "A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (quotations and alteration omitted); *accord Teague v. Lane*, 489 U.S. 288, 308-10 (1989). "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes, *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004), or if the rule "'prohibit[s] the imposition of . . . punishment on a particular class of persons,'" *id*. (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990) (alterations in original)). "This includes decisions that narrow the scope of a criminal statute by interpreting its terms . . . ."[8] *Id*. at 351 (citing *Bousley v. United States*, 523 U.S. 614, 620-21 (1998)).

*Johnson* "is substantive rather than procedural because it 'narrow[ed] the scope' of § 924(e) . . . ." *Bryant*, 738 F.3d at 1278 (quoting *Schriro*, 542 U.S. at 351). Defendants with

---

[8] "In contrast, rules that regulate only the *manner* of determining the defendant's culpability are procedural." *Schriro*, 542 U.S. at 353. Procedural rules "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise" and therefore have a "more speculative connection to innocence . . . ." *Id*. at 352. For that reason, procedural rules generally do not apply retroactively to cases on collateral review unless they fall into the "extremely narrow" category of "watershed rules" that implicate "the fundamental fairness and accuracy of the criminal proceeding." *Id*. Such "watershed rules" are extraordinarily rare; only the rule that counsel must be provided in all criminal trials for serious offenses announced in *Gideon v. Wainwright*, 372 U.S. 335 (1963), has been recognized as such. *See O'Dell v. Netherland*, 521 U.S. 151, 167 (1997); *United States v. Moss*, 252 F.3d 993, 998 (8th Cir. 2001).

three or more convictions for serious drug offenses or violent felonies only due to the fact that at least one of convictions "involve[d] conduct that presents a serious potential risk of physical injury to another" were formerly eligible for life imprisonment under the ACCA. 18 U.S.C. § 924(e)(2)(B)(ii). After *Johnson*, this is no longer the case. "As a result, a significant risk exists that some defendants . . . have erroneously received the increased penalties under § 924(e) and now are serving prison terms above the otherwise applicable statutory maximum of 10 years — 'a punishment that the law cannot impose' upon them." *Bryant*, 738 F.3d at 1278 (quoting *Schriro*, 542 U.S. at 352). *Johnson* does not affect the manner of determining whether a defendant is culpable under the ACCA, but instead affects the culpability itself.

But § 2255(h) imposes a final hurdle where prisoners seek to bring a second-or-successive motion under § 2255. Not only must the new rule *apply* to cases on collateral review, but the new rule must also be "*made* retroactive to cases on collateral review *by* the Supreme Court." 28 U.S.C. § 2255(h)(2) (emphasis added). The concepts are not coterminous. As just explained, *Teague*, *Schriro*, and other Supreme Court cases set forth principles for when a new rule may be *applied* retroactively *by the lower courts*. Under those principles, *Johnson* is retroactive to cases on collateral review. But "[t]he Supreme Court does not 'make' a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts." *Tyler v. Cain*, 533 U.S. 656, 663 (2001) (alteration omitted). "In such an event, any legal conclusion that is derived from the principles is developed by the lower court (or perhaps by a combination of courts), not by the Supreme Court." *Id*. "[A] new

rule is not 'made retroactive to cases on collateral review' *unless the Supreme Court holds it to be retroactive.*" *Id.* (emphasis added).[9]

*Johnson* did not say a word about whether the new rule announced in that case was being made retroactive. No subsequent holding of the Supreme Court has "made" the very recent *Johnson* decision retroactive to cases on collateral review. Without a declaration from the Supreme Court that *Johnson* has been made retroactive, this Court cannot conclude that Greer may test the legality of his detention through a second-or-successive motion under § 2255.

Although the Seventh Circuit authorized a second-or-successive motion under § 2255 that raised a claim under *Johnson*, *see Price v. United States*, – F.3d – , 2015 WL 4621024, at *3 (7th Cir. Aug. 4, 2015), its analysis of whether the Supreme Court "made" Johnson retroactive to cases on collateral review is unsound.[10]

According to *Price*, the new rule announced in *Johnson* satisfies § 2255(h)(2) and *Tyler* because the new rule is retroactive under *Teague*. *Id.* at *2-3. But *Tyler* made clear that retroactivity under *Teague* was *irrelevant* to the question of whether a new rule was made

---

[9]*Tyler* concerns the application of 28 U.S.C. § 2244(b)(2)(A), which concerns second-or-successive habeas petitions brought by state prisoners, not second-or-successive motions under § 2255(h)(2). That said, the contexts are nearly identical, and the phrase at issue in *Tyler* — "made retroactive to cases on collateral review by the Supreme Court" — is the same as the phrase used in § 2255(h)(2). The central holding of *Tyler* has regularly been applied to § 2255(h)(2) by the circuit courts. *See, e.g.*, *Ezell v. United States*, 778 F.3d 762, 765 (9th Cir. 2015); *In re Moss*, No. 13-14570-D, 2013 WL 10252931, at *2 (11th Cir. Oct. 23, 2013); *In re Sparks*, 657 F.3d 258, 260 n.2 (5th Cir. 2011) ("Although *Tyler* was decided in the context of a successive petition filed by a state prisoner and interprets 28 U.S.C. § 2244(b)(2)(A), the decision applies with equal force to the identically-worded § 2255(h)(2) standard for successive motions to vacate, set aside, or correct a sentence filed by federal prisoners.").

[10] The Eleventh Circuit, in a slightly different context, has also rejected the analysis in *Price*. *See In re Rivero*, – F.3d – , 2015 WL 4747769, at *3-5 (11th Cir. Aug. 12, 2015).

retroactive by the Supreme Court. *Tyler*, 533 U.S. at 666-67. As the court there noted, "The most [Tyler] can claim is that based on the principles outlined in *Teague,* this court *should* make *Cage* retroactive to cases on collateral review. What is clear, however, is that we have not 'made' *Cage* retroactive to cases on collateral review." *Id*. at 666. Greer's circumstance is highly similar to the petitioner in *Tyler*. Greer, like Tyler, can claim no more than that, based on the principles outlined in *Teague*, the Supreme Court *should* make *Johnson* retroactive to cases on collateral review. What is clear, however, is that the Supreme Court has not 'made' *Johnson* retroactive to cases on collateral review. *Tyler*, 533 U.S. at 666.

It is true, as pointed out in *Price*, that circuit courts have sometimes relied upon *Teague* in denying requests for authorization under § 2255(h)(2). *See United States v. Redd*, 735 F.3d 88, 91-92 (2d Cir. 2013) (per curiam); *In re Zambrano*, 433 F.3d 886, 887-89 (D.C. Cir. 2006); *Paulino v. United States*, 352 F.3d 1056, 1058-59 (6th Cir. 2003); *Cannon v. Mullin*, 297 F.3d 989, 993-94 (10th Cir. 2002); *In re Turner*, 267 F.3d 225, 228-30 (3d Cir .2001). But this does not mean, as *Price* concludes, that *Teague* retroactivity is sufficient, or that a new rule can be made retroactive by the Supreme Court through the operation of *Teague*. The courts citing *Teague* upon § 2255(h)(2) review did so because, in denying a motion for a second-or-successive § 2255 motion, it is sufficient to show that the new rules asserted by the petitioners do not *apply* retroactively. Going on to examine whether the new rules which do not apply to cases on collateral review were also not "made retroactive . . . by the Supreme Court" would have been entirely unnecessary; the petitioners could not avail themselves of the new rules anyway.

*Price* is incompatible with *Tyler*, which is binding on this Court. Accordingly, this Court recommends that *Price* be rejected.

*D. Could Greer Previously Have Raised His Claim under § 2255?*

It is not enough for Greer to show that he cannot currently raise his claim under *Johnson* via a motion under § 2255. He must also show that he could not have raised the issue previously, as § 2255 is not inadequate or ineffective where the prisoner has "'not been denied an unobstructed procedural opportunity to present'" his claim.[11] *Abdullah*, 392 F.3d at 963 (quoting *Ivy v. Pontesso*, 328 F.3d 1057, 1061 (9th Cir. 2003)).

The broadest possible interpretation of the exclusive-remedy rule is that adopted by the Tenth Circuit, which can be stated as follows: As long as the prisoner had the chance to present his argument in a § 2255 motion that would not have been dismissed on procedural grounds, he may not seek habeas relief. *See Prost v. Anderson*, 636 F.3d 578, 597 (10th Cir. 2011). This position, if adopted here, would require dismissal of Greer's habeas petition. In a literal sense (and only in a literal sense), Greer *could* have argued on direct appeal or in his motion under § 2255 that the residual clause was invalid. His argument would have been utterly foreclosed by Supreme Court case law — *James* was decided before indictment under which Greer was convicted had been filed, and *Sykes* was decided after Greer filed his motion under § 2255 — but it is true enough that Greer nevertheless could have earlier offered the argument put forward in *Johnson*.

Generally speaking, though, a prisoner always in theory *could* have presented an argument earlier in a motion under § 2255. But no other circuit has adopted the position that § 2255 is adequate or effective because it previously offered the petitioner a chance to run head-

---

[11]The government does not contend that Greer could have raised the issue previously, but again, because the question of whether Greer may avail himself of the savings clause is jurisdictional, this Court must address it.

first into a brick wall of adverse precedent.[12] The Tenth Circuit's position, if adopted, would

eviscerate the savings clause in all but the truly odd situations in which the prisoner's sentencing

court has since been abolished. *See Prost*, 636 F.3d at 588 (citing *Ackerman v. Novak*, 483

F.3d 647, 649 (10th Cir. 2007)). In no other circumstance would the savings clause apply.

Ultimately, this Court rejects the Tenth Circuit's position. It does not accurately describe

how the vast majority of courts have interpreted the savings clause; almost none of the

successful challenges that have been brought under the savings clause would have prevailed

under the Tenth Circuit's view, because, almost invariably, the prisoner could have previously

offered the doomed argument. It does not comport with the plain language of the savings clause.

*See In re Davenport*, 147 F.3d at 611 ("A procedure for postconviction relief can fairly be

termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for

judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a

nonexistent offense."). And it is counterproductive for both defendants and the courts; the Tenth

Circuit's position amounts to a requirement that all defendants, in all circumstances, must offer a

_____

[12]The Tenth Circuit points out in *Prost* that *someone* must step forward and challenge existing precedent for a new rule to be established, and so, in the end, the earlier opportunities cannot be wholly ineffective. *See Prost*, 636 F.3d at 590-91. The procedural history of *Johnson* belies this argument. The defendant in *Johnson* challenged the application of the residual clause to a prior conviction for unlawful possession of a short-barreled shotgun. *See Johnson*, 135 S. Ct. at 2556. This limited question of whether possession of a short-barreled shotgun was a "violent felony" was what first made its way to the Supreme Court; only after oral argument was the defendant expressly directed to address the constitutionality of he residual clause. *See Johnson v. United States*, 135 S. Ct. 939 (2015). Put another way, the *Johnson* defendant did not begin with a frontal assault on Supreme Court precedent, but rather started with an argument that the precedent had been misapplied in his case. Only later, upon invitation of the Supreme Court, did the defendant focus specifically on the constitutionality of the residual clause. In contrast, a prisoner in Greer's position could have offered nothing but the naked argument that the Supreme Court was wrong — and he could have done so only *prior* to the Supreme Court *reaffirming* its position that the residual clause was constitutional. *See Sykes*, 131 S. Ct. at 2277.

bevy of hopeless arguments should they ever hope to benefit from a retroactive change in the law.[13] "It would just clog the judicial pipes to require defendants, on pain of forfeiting all right to benefit from future changes in the law, to include challenges to settled law in their briefs on appeal and in postconviction filings." *Id.* at 610.

Whatever the precise dimensions of the adequacy and effectiveness requirements of § 2255(e), it is enough at this time to note that § 2255 could not have been adequate or effective for Greer to raise his claim that the residual clause was unconstitutional. This is not a case in which success was merely *unlikely*. Greer was completely and utterly precluded from prevailing on an argument putting forward the position adopted by the Supreme Court in *Johnson*. From the moment Greer's criminal case began, Supreme Court precedent foreclosed the claim that the residual clause was invalid. *James*, 550 U.S. at 210 n.6. Had Greer nevertheless pressed the matter on direct appeal, and if the issue had again been taken up by the Supreme Court, he would have found an unreceptive audience, as the Supreme Court again affirmed the constitutionality of the residual clause *after* Greer's direct appeal had concluded. *See Sykes*, 131 S. Ct. at 2277. Greer's motion for relief under § 2255 likewise was filed between the time *James* and *Sykes* were decided, and so any proto-*Johnson* argument in his motion for relief under § 2255 would

---

[13]"Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

have been just as pointless as an argument raised on direct appeal.[14]  Thus, at no time has Greer

had an effective or adequate opportunity to test his detention under § 2255.

Finally, this Court notes that permitting Greer to go forward with a savings-clause

challenge will not throw open the floodgates that have, up to this point, held back the deluge of

habeas petitions that § 2255 was intended to stem.  A habeas petitioner seeking to invoke the

savings clause has a small target to hit.  His claim must be predicated on a new rule of law; if it

is not, then he could have raised the claim previously under § 2255.  The new rule of law must

be retroactive to cases on collateral review; if it is not, then the petitioner may not take

advantage of it.  The new, retroactive rule (of which there are exceedingly few) must affect the

*legality* of the petitioner's detention.  The petitioner cannot ever have had the opportunity —

either previously or at present — of raising the claim under § 2255 in a manner where judicial

rectification was possible.  The new, retroactive rule cannot be one that may be asserted in a

second-or-successive motion under § 2255.  And all equitable restrictions on habeas corpus —

such as the abuse-of-the-writ doctrine — still apply.

_____

[14]Had Greer foregone his initial motion under § 2255, it is likely that he could today bring a *first* motion under § 2255 raising his *Johnson* claim.  *Compare* 28 U.S.C. § 2255(f)(3) (setting a one-year limitations period starting from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been *newly recognized by the Supreme Court* and made retroactively applicable to cases on collateral review . . . ." *with* 28 U.S.C. § 2255(h)(2) (allowing a second-or-successive motion under § 2255 where the petitioner relies upon "a new rule of constitutional law, *made retroactive to cases on collateral review* by the Supreme Court, that was previously unavailable" (emphases added).  The *Tyler* standard does not appear to apply to § 2255(f)(3).  *See United States v. Olvera*, 775 F.3d 726, 730 n.11 (5th Cir. 2015).  No court (so far as this Court can tell) has ever held that the fact that a petitioner could have held out on pursuing relief under § 2255 (and thereby escaped the gate-keeping requirements of § 2255(h)) is enough to preclude savings-clause relief.  Such a finding would require prisoners to risk foregoing other potentially valid claims for collateral relief under § 2255 — including ineffective-assistance claims, which *must* be raised via § 2255 and not on direct review — should they wish to take advantage of a future, retroactive change in the law.

Greer has threaded the needle. His habeas petition is properly before this Court.

Accordingly, this Court recommends that the government's motion to dismiss for lack of jurisdiction be DENIED.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss for lack of jurisdiction [ECF No. 8] be DENIED.

Dated: August <u>20</u>, 2015                    <u>  s/Franklin L. Noel     </u>
                                                 Franklin L. Noel
                                                 United States Magistrate Judge


## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.